2026 IL App (1st) 250835-U

SECOND DIVISION
June 30, 2026

No. 1-25-0835

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE *ex rel*. KWAME RAOUL, Attorney General of the State of Illinois, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff/Counter-Defendant-Appellee, | ) ) | |
| v. | ) ) | No. 23 CH 8494 |
| RESIDENTS ENERGY, LLC, | ) ) | |
| Defendant/Counter-Plaintiff, | ) ) | |
| and | ) ) | |
| IDT ENERGY, INC., | ) ) | Honorable Thaddeus Wilson, |
| Proposed Intervenor-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE VAN TINE delivered the judgment of the court.
Justices McBride and D.B. Walker concurred in the judgment.

**ORDER**

¶ 1    ***Held***:  We affirm the circuit court's denial of IDT Energy, Inc.'s petition to intervene in the State's consumer fraud enforcement action against Residents Energy, LLC because the petition was untimely and did not include a proposed pleading as the statute requires.

¶ 2    This appeal arises from the circuit court's denial of Proposed Intervenor IDT Energy, Inc.'s ("IDT") petition to intervene in a consumer fraud enforcement action that the People of the State of Illinois, through the attorney general ("the State"), brought against Residents Energy, LLC ("Residents"). On appeal, IDT argues that the circuit court erred in denying its petition to intervene because it was procedurally proper and timely, proposed viable claims, and intervention was necessary to protect its rights under a consent decree. For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4                              A. Context and Prior Cases

¶ 5    IDT is an alternative retail electricity supplier ("ARES") licensed by the Illinois Commerce Commission ("Commission") to sell electricity to consumers in Illinois. See 220 ILCS 5/16-115 (West 2024). Residents is also an ARES. While a default public utility both supplies and delivers electricity to consumers who do not choose an ARES, consumers who do choose an ARES receive supply from that ARES but delivery still occurs through the public utility. Each ARES markets and sells only its own branded electricity programs.

¶ 6    IDT and Residents are closely related corporate entities: both are subsidiaries of the same parent company, Genie Retail Energy, Inc. Prior to October 2018, Residents was itself a subsidiary of IDT. Following a corporate restructuring in October 2018, Residents became a direct subsidiary of Genie and an affiliate of IDT rather than its subsidiary. It is against this corporate backdrop that IDT claims an interest in the outcome of the present enforcement action against Residents.

¶ 7                                    1. *State v. IDT*

¶ 8    In November of 2018, the State sued IDT under the Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 *et seq.* (West 2018)) (the Act), and the Telephone Solicitations Act (815 ILCS 413/1 *et seq.* (West 2018)). The complaint alleged that IDT and its sales representatives (1) engaged in a pattern and practice of fraudulent and deceptive solicitations to enroll consumers as IDT electricity customers, (2) misrepresented savings, and (3) caused Illinois consumers to pay millions of dollars more than they would have paid the default utility.

¶ 9    On June 18, 2019, the circuit court entered a Final Judgment and Consent Decree ("Consent Decree"). The Consent Decree required IDT to pay $3 million in restitution to its current and former Illinois customers and prohibited it from marketing in Illinois for two years. In exchange, the State and the Commission agreed to release IDT and "its past and present parents, subsidiaries and divisions, affiliates, predecessors, successors, assigns, directors, officers, employees, and agents from all claims that the [State and Commission] could have brought based upon the acts and practices alleged in the Complaint."

¶ 10    In October of 2019, approximately nine days after IDT completed its settlement payment, the State issued a subpoena to Residents concerning its marketing practices during the period covered by the Consent Decree. Residents objected, asserting that the Consent Decree's release barred all claims the State could have brought against Residents as an affiliate or former subsidiary of IDT. The State countered, asserting that the release applied only to "acts and practices" involving the marketing and sale of IDT-branded electricity—activities that, the State argued, affiliates such as Residents could not legally perform.

¶ 11                                    2. *State v. Residents I*

¶ 12    In December 2019, the State sued to enforce the subpoena. Residents counterclaimed, alleging abuse of process. IDT filed a motion to enforce the Consent Decree. The circuit court

3

considered these filings together and ruled, in June of 2021, that the Consent Decree addressed "only the sale of energy to IDT's customers," and did not address "what [Residents] does as a separate entity in selling to [Residents'] customers." The court did not address whether the release extended to subsidiaries (as opposed to affiliates).

¶ 13    IDT and Residents filed a joint notice of appeal, but the parties subsequently negotiated a settlement. As part of that resolution, Residents agreed to produce a limited set of documents in response to the subpoena. In April 2023, with the parties' agreement, the circuit court dismissed with prejudice both the State's claim to enforce the subpoena and Residents' counterclaim for abuse of process. IDT, which had moved to enforce the Consent Decree in the parallel *State v. IDT* proceeding, was not a party to *State v. Residents I* and did not assert any independent claims in that proceeding. The court also dismissed the joint appeal after IDT and Residents voluntarily moved to dismiss it. At the time of settlement, the State advised Residents that "next steps" could include an action under the Act.

¶ 14                              B. This Case (*State v. Residents II*)

¶ 15    In September of 2023, the State sued Residents, alleging violations of the Act (815 ILCS 505/1 *et seq.* (West 2022)) and the Telephone Solicitations Act (815 ILCS 413/1 *et seq.* (West 2022)). The State alleged that Residents employed fraudulent, unfair, and deceptive practices to market electricity to Illinois consumers, causing them to pay millions of dollars more than they would have paid the default utility. Unlike *State v. IDT*, which concerned the promotion of IDT's electricity service and harms to IDT's customers, the present case concerns only the promotion of Residents' electricity service and harms to Residents' customers.

¶ 16    Residents moved to dismiss, arguing that the Consent Decree's release barred the State's claims. In July 2024, the circuit court denied the motion, reasoning that the court's prior ruling in

*State v. Residents I* (in which it concluded that the Consent Decree's release did not bar the State's claims against Residents) precluded Residents from relitigating the same issue. The court also "independently [found] that the Consent Decree on its clear terms does not apply to the conduct which forms the basis for the instant action and is thus not an affirmative matter that defeats the claim."

¶ 17    In August of 2024, Residents filed counterclaims against the State for fraudulent inducement, mistake, and abuse of process, purportedly asserting them on behalf of both Residents and IDT. In November 2024, Residents filed an amended answer and counterclaims that identified IDT as an "Additional Counter-Plaintiff" in each count.

¶ 18    In February of 2025, IDT filed a petition to intervene as an additional counter-plaintiff. IDT did not attach a proposed pleading to its petition, instead indicating it did "not intend to file any separate pleading" and proposed to adopt Residents' counterclaims. The State opposed intervention, arguing the petition was untimely, procedurally deficient, and futile because collateral estoppel, the Consent Decree, and sovereign immunity barred IDT's proposed claims.

¶ 19    In April of 2025, the circuit court granted the State's motion to dismiss Residents' counterclaims and denied IDT's petition to intervene. As to the petition, the court found it untimely, procedurally deficient for failure to include a proposed pleading, and futile because IDT did not have any viable claims. The court entered a finding under Supreme Court Rule 304(a) (Ill. Sup. Ct. R. 304(a) (eff. Mar. 8, 2016)), indicating that there was no just reason to delay enforcement or appeal of the ruling on IDT's petition.

¶ 20    IDT appeals.

¶ 21                                   II. ANALYSIS

¶ 22    On appeal, IDT argues that the circuit court erred in denying its petition to intervene because its motion was procedurally proper and timely, its proposed claims were viable, and intervention was necessary to protect its rights under the Consent Decree.

¶ 23    We will not reverse a circuit court's denial of a petition to intervene absent an abuse of discretion. *A & R Janitorial v. Pepper Construction Co.*, 2018 IL 123220, ¶ 15. This standard applies whether intervention is sought as of right or by permission. *Application of County Collector of Du Page County*, 181 Ill. 2d 237, 247 (1998). A court abuses its discretion when its ruling is "arbitrary, fanciful, or unreasonable" or where its ruling rests on a legal error. *Urban Partnership Bank v. Chicago Title Land Trust Co.*, 2017 IL App (1st) 162086, ¶ 15.

¶ 24                              A. Failure to File a Proposed Pleading

¶ 25    The intervention statute requires that a petition to intervene be "accompanied by the initial pleading or motion which he or she proposes to file." 735 ILCS 5/2-408(e) (West 2024). The purpose of this is to "give both the trial court and any opposing party a clear indication of the relief the potential intervenor will be seeking if his petition to intervene is granted." *Soyland Power Co-op. v. Illinois Power Co.*, 213 Ill. App. 3d 916, 920 (1991). Without a proposed pleading, the trial court and opposing parties cannot "assess the appropriateness of the petition to intervene." *Id*.

¶ 26    IDT did not attach a proposed pleading to its petition. Instead, it stated it "d[id] not intend to file any separate pleading" and sought to adopt Residents' counterclaims, which had been filed three months earlier. Recently, this Court held that a proposed intervenor cannot satisfy the statutory requirement "by expressly identifying the pleading that Intervenors proposed to adopt." *Bari v. Association of Physicians of Pakistani-Descent of North America*, 2021 IL App (1st)

200341-U, ¶ 38.[1] As the *Bari* court explained, it was aware of no authority "supporting the proposition that merely stating an intention to adopt the pleading of another party may suffice" and the "plain language of the statute . . . precludes such a contention." *Id*. Accordingly, the court held that intervention "was properly denied on this basis alone." *Id*. ¶ 37.

¶ 27    IDT contends that requiring a separate filing would be an "improper elevation of form over substance" because its proposed claims were already identifiable from the record. We disagree. Our appellate courts have held that the statutory language is mandatory. See *State ex rel. Tucker v. Commonwealth Edison Co.*, 71 Ill. App. 3d 161, 163 (1979). The record illustrates why the statutory requirement exists. IDT nominally joined all three of Residents' counterclaims below, but on appeal argued only fraudulent inducement and mistake, omitting any argument on abuse of process entirely. The proposed pleading requirement exists to prevent exactly this situation in which a petitioner's goals remain unclear to the court and opposing parties. *See Soyland*, 213 Ill. App. 3d at 920. The circuit court did not abuse its discretion in denying intervention on this basis.

¶ 28                                  B. Timeliness

¶ 29    Even if IDT had complied with the statutory pleading requirement, its petition was not timely. A petition to intervene, whether as of right or by permission, must be timely. 735 ILCS 5/2-408(a), (b) (West 2024). Relevant factors include when the proposed intervenor became aware of the litigation, the time elapsed between commencement of the action and the petition, and the reason for delay. *In re Bailey*, 2016 IL App (5th) 140586, ¶ 18.

¶ 30    IDT does not dispute that it was aware of this litigation from its inception in September 2023. It nonetheless waited 16 months before filing its intervention petition in February of 2025.

---

[1]We cite *Bari* for persuasive authority under Illinois Supreme Court Rule 23(e)(1) (eff. June 3, 2025).

Our courts have found comparable delays, including a 15-month delay and a 19-month delay, sufficient to support denials of intervention as untimely. See, *e.g.*, *Seger v. DuPage County*, 58 Ill. App. 3d 858, 861 (1978) (affirming denial of intervention where proposed intervenor waited 15 months after learning of the proceeding); *Moran v. Commonwealth Edison Co.*, 74 Ill. App. 3d 964, 974 (1979) (affirming denial where proposed intervenor waited 19 months). The cases on which IDT relies for timeliness only underscore its lack of diligence. For instance, in *In re Bailey*, 2016 IL App (5th) 140586, ¶ 19, the court reversed a denial of intervention specifically because the proposed intervenor had filed its petition within 31 days of learning of the proceeding. And, in *Freesen, Inc. v. County of McLean*, 277 Ill. App. 3d 68, 73 (1995), the appellate court reversed because the petition had been filed approximately one month after the proposed intervenor learned it could no longer rely on existing parties. Both of those decisions illustrate the importance of prompt action, which is the opposite of what IDT did here.

¶ 31    IDT contends that it acted promptly once the Attorney General challenged Residents' standing to assert its counterclaims. But the standing problem with a non-party seeking rescission or reformation of a contract is not entirely novel. See *Norwest Financial Leasing, Inc. v. Morgan Whitney, Inc.*, 787 F. Supp. 895, 900 (D. Minn. 1992); *In re Pantalone*, 2011 WL 6357794, at *2 (Del. Ch. Dec. 9, 2011). IDT should have recognized from the litigation's outset that Residents, as a non-party to the Consent Decree, faced standing challenges to asserting IDT's contractual rights. Moreover, Residents' own initial pleading in August 2024 gave notice that IDT "is prepared to intervene," confirming that IDT anticipated the need to intervene well before February 2025. The circuit court did not abuse its discretion in concluding this delay was untimely.

¶ 32                              III. CONCLUSION

¶ 33 In sum, IDT's petition was both procedurally deficient (for failure to attach a proposed pleading as required by statute) and untimely (16-month delay). For these two independent reasons, we conclude that the circuit court did not abuse its discretion when it denied IDT's petition to intervene. Accordingly, we affirm the judgment of the circuit court of Cook County.

¶ 34 Affirmed.